IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**TONYA G. DAVIDSON**;

    Plaintiff,

v.                                                                              Civil Action No. 2:11-CV-55
                                                                                                (BAILEY)

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security**;

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel [Doc. 13] and the defendant's Objections thereto [Doc. 14]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. See **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

### I. Background

On April 15, 2004, the plaintiff suffered injuries when she was in an automobile accident [Doc. 10 at 1]. On April 27, 2005, the plaintiff filed her disability claim [Doc. 10 at 1; Doc. 7 at 15]. The claim was initially denied on September 7, 2005, and upon reconsideration on March 8, 2006 [*Id.*]. A hearing was held on October 31, 2007, at which Administrative Law Judge ("ALJ") Pileggi "rendered an unfavorable ruling" [*Id.*]. The ruling was vacated by the Appeals Council on June 11, 2009, and remanded to ALJ Moon for a new hearing to "further evaluate [Ms. Davidson's] subjective complaints. . . , evaluate her mental impairments . . . , consider[ ] [Ms. Davidson's] maximum residual functional capacity . . . , [and] obtain supplemental evidence from a vocation expert . . ." [Doc. 7 at 39]. ALJ Moon held the hearing on October 19, 2009, and rendered an unfavorable ruling on January 15, 2010 [Doc. 7-6 at 56-93; Doc. 7 at 12-36]. On May 27, 2011, the Appeals Council denied Ms. Davidson's request for review of ALJ Moon's January 15, 2010, ruling [Doc. 7 at 5-7].

On July 26, 2011, the plaintiff filed a complaint [Doc. 1] seeking judicial review of the January 15, 2010, adverse decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to the Local Rules, this case was referred to Magistrate Judge Joel for a recommended disposition. On October 28, 2011, and November 28, 2011, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 10 & 11]. In the complaint, the plaintiff states that the determination by ALJ Moon was "erroneous for [three] reasons" [Doc. 1 at 2-3]. In support of her motion for summary judgment, the plaintiff reiterates these claims of error on the part of the ALJ. In the brief in support of his motion for summary judgment, the defendant responds to each claim and argues that the ALJ's

decision is supported by substantial evidence.

First, the plaintiff asserts that the ALJ's decision was not supported by substantial evidence [*Id.* at 3].  The plaintiff states that the ALJ "ignored the substantial evidence in this case in order to reach an unfavorable decision" because he believed that the plaintiff has "ulterior motives" [Doc. 10 at 5].  The plaintiff further states that the ALJ's "credibility determination to disregard [her] subjective complaints . . . was not supported by the record" [*Id.*].  In response, the defendant argues that the ALJ's credibility determination was supported by substantial evidence, including "Plaintiff's conflicting statements, activities of daily living, and objective medical records" [Doc. 12 at 1].  The defendant further states that the ALJ properly considered plaintiff's subjective complaints [*Id.* at 11-15].

Second, the plaintiff asserts that the ALJ's decision was not supported by vocational expert testimony [Doc. 1 at 3].  With regard to the alleged second error, the defendant states that "[a]fter consulting with a vocational expert, the ALJ determined that someone of Plaintiff's age, education, work experience, and residual functional capacity could perform the sedentary, unskilled occupations of final assembler - ink printer and type copy examiner" [Doc. 12 at 10].  The defendant also states that the plaintiff bears a significant burden to prove a disability, which the ALJ found was not met in this case because the plaintiff "could perform other occupations in the national economy" [*Id.* at 10-11].

Third, the plaintiff asserts that the ALJ's application was not in accordance with the law [Doc. 1 at 3].  More specifically, the plaintiff states that (1) the ALJ abused his discretion in making the findings in his order, (2) the ALJ committed an error of law in the evaluation of the plaintiff's mental impairments and the effect on the plaintiff's residual functional capacity, and (3) the ALJ's conclusions are not supported by substantial

evidence [Doc. 10 at 5]. The defendant argues that, with regard to the third alleged error, the ALJ assigned proper weight to plaintiff's Global Assessment of Functioning ("GAF") scores and statements of drowsiness [Doc. 12 at 14-15]. As such, the defendant argues that the ALJ's decision is "supported by substantial evidence" and "should be affirmed" [Doc. 11 at 1].

On December 14, 2011, Magistrate Judge Joel recommended that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [Doc. 13 at 39]. The magistrate judge further recommended that the decision of the Commissioner be affirmed and the case dismissed with prejudice [*Id.*]. The magistrate judge concluded that the ALJ "properly rejected [the plaintiff's] subjective complaints based on medical and nonmedical evidence" [Doc. 13 at 31]. In addition, the magistrate judge found that "substantial evidence supports the weight the ALJ assigned to [the GAF] score" [*Id.* at 38]. On December 28, 2011, the plaintiff filed timely objections [Doc. 14] to these conclusions in the magistrate judge's report and recommendation. The defendant filed a response [Doc. 15] thereto on December 29, 2011.

## II. Applicable Standards

### A. Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42. U.S.C. § 405(g). "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive." **Richard v. Perales**, 402 U.S. 389, 390 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase

"'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See* **Perales**, 402 U.S. at 401 (*citing* **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229 (1938)).  Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . .." **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966).  Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence." **Id.** (*citing* **Snyder v. Ribicoff**, 307 F.2d 518, 520 (4th Cir. 1962)).  Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.  **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979).  "This Court does not find facts or try the case *de novo* when reviewing disability determinations." **Id.**; *see also* **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976); **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One:    Determine whether the claimant is engaging in substantial gainful activity;

Step Two:    Determine whether the claimant has a severe impairment;

Step Three:  Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four:   Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520(a)(4) (2011).

### III. Discussion

In her Objections [Doc. 14], timely filed on December 28, 2011, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

### A. ALJ's Credibility Analysis

The plaintiff alleges that the ALJ's credibility analysis was based solely upon the ALJ's belief that the plaintiff had ulterior, financial motives [Doc. 14 at 2 and 8]. The plaintiff argues that the evidence cited by the magistrate judge in support of the ALJ's credibility determination fails to support a conclusion that the plaintiff "magnified her complaints in order to obtain a financial benefit" [*Id.* at 2]. The defendant states that "the ALJ's credibility determination was appropriate because [p]laintiff's conflicting statements, her activities of daily living, and the objective medical evidence all demonstrated that she overstated the limiting effects of her symptoms" [Doc. 15 at 2, citing Tr. 17-33]. For the reasons set out below, and those more fully stated in the magistrate judge's R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

An ALJ's credibility analysis is a two-step process:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be

> expected to produce the individual's pain or other symptoms . . ..
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

SSR 96-7p; 1996 WL 374186, *2.

In addition to the objective medical evidence, the adjudicator shall consider the following factors when additional information is needed for the credibility analysis:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 1996 WL 374186, *3.

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including a right ankle fracture, left wrist ligament injury, degenerative disk disease and degenerative arthritis of the cervical spine, as well as other impairments, which could reasonably be expected to produce the plaintiff's pain or other symptoms [Doc. 7 at 18]. Additionally, the ALJ noted that he found that the plaintiff's headaches to impose only

minimal functional limitations [*Id.*].

At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects on her ability to do basic work activities [*Id.* at 19-34]. In so doing, the ALJ considered the plaintiff's daily activities, plaintiff's reported improvements, plaintiff's delay in filing for disability benefits, and plaintiff's demonstrated belief in her ability to pursue another career [*Id.*].

### 1. Plaintiff's Daily Activities

First, this Court finds no error in the ALJ's consideration of the plaintiff's daily activities. In so doing, this Court notes that such a consideration is explicitly contemplated by the first factor listed above. See SSR 96-7p; 1996 WL 374186, *3. In addition, this Court finds no indication of the type of selective citation condemned in ***Hines v. Barnhart***, 453 F.3d 559 (4th Cir. 2006). In ***Hines***, the Fourth Circuit Court of Appeals ("Fourth Circuit") affirmed a district court which found that an ALJ erred when he selectively cited evidence concerning the daily activities of a claimant suffering from sickle cell disease. ***Id.*** at 565-66. In particular, the ALJ cited that the claimant raked his yard and cut his grass, occasionally did repairs such as fixing a door knob, and was active in his church as a deacon. ***Id.*** at 566. The Court found that this was selective citation because the ALJ improperly ignored the claimant's testimony that he "[r]akes the yard or tries mowing the grass [but] when [he] start[s] to feel bad [he] stop[s] and finish[es] up – maybe tr[ies] to finish up the next day . . .." ***Id.*** The Court found further selective citation in that the claimant had actually testified that he "probably" would "try to fix . . . a doorknob" and that he attends church only two or three times a month. ***Id.*** Unlike in ***Hines***, the plaintiff has

failed to provide evidence of any significant qualifications to the daily activities relied upon that the ALJ ignored to discredit the plaintiff's subjective complaints. Moreover, this case is also distinguishable from *Hines* in that the ALJ here relied upon other factors in addition to the plaintiff's daily activities. Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### 2.  Plaintiff's Reported Improvements

Second, this Court finds no error in the ALJ's consideration of the plaintiff's reported improvements. In so doing, this Court notes that such a consideration is explicitly contemplated by the second factor listed above. When considering the location, duration, frequency, and intensity of the individual's pain or other symptoms, the ALJ inherently considers any improvements that may be contained in the record.

In her objections, the plaintiff states that the ALJ applied the wrong standard to this case by looking for "complete debility" and the plaintiff's reports regarding the changes in her condition should make her more credible, not less credible [Doc. 14 at 6]. However, in his review of the plaintiff's reports regarding her pain or other symptoms, the ALJ stated that the plaintiff's "inconsistent, intermittent and sporadic periods of progression and regression in her treatment fail to demonstrate the existence of a totally disabling condition rendering the claimant unable to maintain consistent employment for a continuous period of 12 months" [Doc. 7 at 23]. As such, the ALJ was not applying a "complete debility" standard as the plaintiff attempts to argue in her objections [*See* Doc. 14 at 6]. Furthermore, the plaintiff fights an uphill battle when she requests this Court to essentially overturn the ALJ's credibility determination by stating that the changes in her condition

should make her more credible. See **Shively v. Heckler**, 739 F.2d 987, 989-90 (4th Cir. 1984) *(*stating that an ALJ's credibility determination is given great weight because the ALJ is provided with the "opportunity to observe the demeanor and to determine the credibility of the claimant"). In addition, as stated above, the ALJ did not rely on only one factor when completing his credibility determination; the ALJ considered the plaintiff's inconsistent statements regarding her reported improvement in addition to the plaintiff's daily activities (as discussed above) and other factors (as discussed below).  Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### 3. Delay in Filing

Third, this Court finds no error in the ALJ's consideration of the plaintiff's delay in filing her application for disability benefits.  In so doing, this Court notes that the ALJ considered this fact in addition to many others, including those specifically listed in the above seven factors, when making his credibility determination.  Despite plaintiff's arguments to the contrary, this factor was not the sole basis for the ALJ's credibility determination.  As such, the ALJ properly considered the entire record, including this delay, when making his credibility determination.  See **Craig v. Chater**, 76 F.3d 585, 594 (4th Cir. 1996).

In her objections, the plaintiff argues that the fact that she waited to file her application until it "became apparent that her disability would last longer than one year" does not indicate that she was not injured before that time [Doc. 14 at 2-3].  The plaintiff further argues that her statement regarding her disability insurer "making her file" for benefits should have no bearing on the determination that she was financially motivated

[*Id.* at 3]. However, the ALJ never stated that he doubted that plaintiff was injured in the car accident; the ALJ simply stated that he doubted the accuracy of the plaintiff's subjective reports regarding her injuries [*See* Doc 7 at 20, stating that "the credibility of the claimant's subjective allegations are tarnished by a number of considerations"]. Moreover, because the ALJ is provided with the "opportunity to observe the demeanor and to determine the credibility of the claimant," the ALJ's credibility determination is given great weight. *See* **Shively**, 739 F.2d at 989-90. As such, it is not for this Court to second guess one factor utilized by the ALJ in his credibility determination where the ALJ's ruling as a whole is supported by substantial evidence. *See* **King**, 599 F.2d at 599. Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### 4. Confidence to Start New Career

Fourth, this Court finds no error in the ALJ's consideration of the plaintiff's confidence to start a new career. The plaintiff objects to the ALJ's consideration of her desire to return to school, stating that such a desire does not "equate with an *ability* to return to school" [Doc. 14 at 4]. However, the record reflects that the plaintiff consistently reported planning to return to school over an extended period of time; moreover, the plaintiff stated in August 2005 that she was attending classes, which does equate with the ability to return to school.

The ALJ noted that, on March 25, 2005, the plaintiff planned to attend remedial dental hygiene school [Doc. 7 at 26, citing Exhibit 9F1]. On April 13, 2005, and April 15, 2005, the plaintiff indicated that she had some concerns with this plan and "was considering other scholastic pursuits including obtaining a teaching certificate" [*Id.*, citing Exhibit 13F3].

On April 18, 2005, the plaintiff still indicated that she was considering plans for future employment [*Id.*, citing Exhibit 9F1]. The ALJ noted that the plaintiff applied for and received unemployment benefits in July 2004, which typically requires a "willingness and belief that [the individual] is still capable of engaging in consistent and sustained employment" [*Id.* at 20, citing Exhibit 24F9]. The ALJ further noted that the plaintiff reported on May 9, 2005, that she "planned to go back to college" to begin a new career and anticipated working full time again in the future [*Id.*, citing Exhibit 24F1-2]. On May 31, 2005, the plaintiff stated that she was "going to attend Bethany College for Environmental hygiene" [*Id.* At Exhibit 25F2]. Moreover, on August 23, 2005, the plaintiff reported that she was attending West Liberty College for business and accounting [*Id.*, citing Exhibit 25F2].

Although the plaintiff continued to change plans for her future career, the plaintiff demonstrated a consistent belief in her ability to obtain future employment and start a new career. Moreover, the plaintiff did more than simply contemplate a new career or express a desire to return to school; she took concrete steps towards obtaining future employment by taking classes at Bethany College [*See* Doc. 7 at 26]. Furthermore, this factor was merely one of many upon which the ALJ made his credibility determination [*See id.* at 20, stating that "the credibility of the claimant's subjective allegations are tarnished by a number of considerations"]. As such, it is not for this Court to second guess one factor utilized by the ALJ in his credibility determination where the ALJ's ruling as a whole is supported by substantial evidence. *See* **King**, 599 F.2d at 599. Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

For these reasons and those more fully stated in the magistrate judge's R&R, this

Court finds that substantial evidence supports the ALJ's credibility determination. Accordingly, this Court agrees with the magistrate judge that the ALJ appropriately considered the plaintiff's lack of credibility concerning the intensity, persistence, and limiting effects of his ability to do basic work activities.

### B.  ALJ's Consideration of the Vocational Expert Testimony

The plaintiff generally objects to the magistrate judge's conclusions in the R&R; however, the plaintiff does not provide any specific objection with regard to this claim of error listed in the complaint.  In her complaint, the plaintiff states that "the [ALJ]'s decision was not supported by vocational expert testimony" [Doc. 5 at 3].  However, at the October 19, 2009, hearing, the ALJ heard evidence from Eugene Czuczman, a vocational expert. Mr. Czuczman stated that a type copy examiner, ink printer, or final assembler position could be maintained by a hypothetical person similar to the claimant (*i.e.*, same age, education, and work experience) with certain work limitations [*See* Doc. 7-6 at 89-92].  He further stated that these positions could be done with a sit/stand option [*Id.* at 91-93] and that such positions exist at the regional and national level [*Id.* at 90].  Based upon this testimony, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant has remained capable of making a successful adjustment to other work that exists in significant numbers in the national economy" [Doc. 7 at 35].  As such, the ALJ has relied upon testimony evidence provided by the vocational expert at the October 19, 2009, hearing in making his ruling.  Accordingly, this Court hereby **OVERRULES** the plaintiff's general objection to the extent that it can be construed as an objection on this issue.

**C. ALJ's Consideration of the Plaintiff's Mental Impairments and GAF Score**

The plaintiff states that the GAF score should have been afforded more weight because substantial evidence supports the conclusion that she suffers from a severe mental illness [Doc. 14 at 8]. The plaintiff further states that the Social Security Administration's own physicians have corroborated that she suffers from a severe mental illness [*Id.* at 2, citing Admin. Rec'd pp. 398-412; 511-536; 634-689; and 743-776] and that "Dr. Golas' February 22, 2006, report actually supports the severity of the Plaintiff's mental illness" [*Id.* at 6]. However, this argument misstates the standard of review applicable to this case. The standard is not whether the claimant's argument can be supported by some or substantial evidence. This Court can overturn an ALJ's factual determination only if it finds that the ALJ's ruling is not supported by substantial evidence. If this Court determines that the ALJ's ruling is supported by substantial evidence, then it cannot overturn the ALJ's decision.

The plaintiff met with Dr. Patricia M. Bailey on October 15, 2004; at this time, Dr. Bailey assigned the plaintiff a GAF score of 45 [Doc. 7-5 at 36]. The plaintiff argues that the GAF score should have been afforded more weight by the ALJ given the severity of the plaintiff's mental illness [Doc. 14 at 8]. However, the defendant argues that the GAF score was accorded proper weight because it is not definitive evidence of a disability [Doc. 15 at 3]. The defendant states that a "vast body of medical literature criticizes the accuracy and usefulness of the GAF scale" [*Id.*]. The defendant further argues that permitting a GAF scale to be dispositive on the issue of disability would essentially usurp the Commissioner's authority in such determinations [*Id.* at 4, citing 20 C.F.R. § 404.1527(e)(1)-(3)].

When evaluating opinion evidence, "more weight is given to longitudinal opinion

evidence." *Foster v. Astrue*, 2012 WL 243253, *8 (C.D. Cal. Jan. 23, 2012) (citing 20 C.F.R. § 416.927(d)(2)) (explaining why a GAF score, which is merely a "snapshot assessment," could be discredited by the ALJ where the longitudinal evidence reflects improvement). In this case, the ALJ specifically stated that he routinely assigns "only limited weight" to a GAF score because it is based upon a claimant's subjective statements at a given point of time and then "subjectively processed through the evaluator's own individual mindset and interpretations . . . " [Doc. 7 at 29]. This evaluation approach follows the approach detailed in the regulations. *See* 20 C.F.R. § 416.927(d)(2); *see also* Revised Medical Criteria for Evaluation Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764-65 (Aug. 21, 2000) (to be codified at 20 C.F.R. Parts 404 and 416) (stating that the GAF score "does not have a direct correlation to the severity requirements in [the] mental disorder listings"). As such, for these reasons and those more fully detailed in the magistrate judge's R&R, this Court finds no error with the ALJ's consideration of the GAF score and **OVERRULES** the plaintiff's objection on this issue.

### IV. Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 13]** should be, and hereby is, **ADOPTED**. Further, the plaintiff's Objections **[Doc. 14]** are **OVERRULED**. Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 11]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 10]** is hereby **DENIED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to

enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: February 28, 2012.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE